UNITED STATES DISTRICT COURT
FILED
AUG 3 2017
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v. 17-CR-131-A

DOUGLAS BROOKS,

Defendant.

---

**PLEA AGREEMENT**

The defendant, DOUGLAS BROOKS, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

## I. THE PLEA AND POSSIBLE SENTENCE

1. The defendant agrees to waive indictment and to plead guilty to a one-count Information which charges a violation of Title 18, United States Code, Section 1960 (operating an unlicensed money transmitting business), for which the maximum possible sentence is a term of imprisonment of 5 years, a fine of $250,000, a mandatory $100 special assessment, and a term of supervised release of 3 years. The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2. The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required

to serve in prison all or part of the term of supervised release, up to 2 years, without credit for time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II. ELEMENTS AND FACTUAL BASIS

3. The defendant understands the nature of the offense set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

a. the defendant knowingly conducted, controlled, managed, supervised, directed, or owned all or part of a money transmitting business;

b. the money transmitting business involved the transmission of funds that were known to the defendant to have been derived from a criminal offense or were intended to be used to promote or support unlawful activity; and

c. the money transmitting business affected interstate or foreign commerce.

## FACTUAL BASIS

4. The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

a. Beginning in or before July 2014 and continuing until in or about September 2015, the defendant, DOUGLAS BROOKS, unlawfully operated a money transmitting business involving bitcoin. Commonly referred to as a "virtual currency," bitcoin is a software program that implements a ledger. This ledger is known as the bitcoin blockchain. The blockchain records debits and credits in denominations called bitcoins. Transactions on the blockchain are recorded as transfers of

bitcoins from one bitcoin address to another bitcoin address. The value of a bitcoin is not determined by any authority or entity; rather, it floats on the open market. Between July 2014 and September 2015, the exchange rate for a bitcoin fluctuated between approximately $200 and $600 in United States dollars. Due to some anonymizing features of bitcoin, it was a widely, sometimes the only, accepted form of payment for illegal goods and services on major online black markets during this period.

b. Brooks's business involved receiving U.S. currency from customers, either via cash in person, bank transfer, or other means. He then transferred the funds as bitcoins to addresses designated by the customers. He typically charged a fee of up to ten percent of the value of the funds in each transfer.

c. Although based in Buffalo, New York, Brooks publicly advertised his services on a bitcoin-specific website and reached customers from locations including other states. He typically negotiated pricing with his customers through wire and electronic communications. The typical transaction ranged in value from a few hundred to a few thousand dollars. From July 2014 to September 2015, Brooks engaged in over one thousand transactions.

d. Brooks knew that a substantial portion of the bitcoins that he transferred were intended to be used to purchase controlled substances or that moneys he received to transmit as bitcoins were proceeds of such ventures. Brooks sometimes discussed with his counterparties the use of certain online black markets for distribution of controlled substances. For example, in July 2014, Brooks referred a customer, upon the latter's request, to a particular dark net market for cocaine (hereinafter "Market-1").

e. Among Brooks's biggest customers was an individual referred to hereinafter as "Customer-1". Brooks and Customer-1 transacted, at times between July 2014 and September 2015, approximately $2,500 every week. Customer-1 used the bitcoins to purchase, from online vendors, quantities of marijuana that were then shipped to Customer-1 via the mail, typically by the pound. At times, Brooks even accepted marijuana in lieu of U.S. currency as payment from Customer-1. Brooks's total volume with Customer-1 was over $100,000.

f. Another of Brooks's customers (hereinafter "Customer-2") was based at or near the North Campus of the University of Buffalo. Brooks transacted approximately $30,000 with Customer-2 over the course of a few months in 2015. Brooks knew that Customer-2 possessed "pounds and pounds" of marijuana and made hash oil.

g. On four occasions in 2015, Brooks met in Buffalo with a purported customer who was, unbeknownst to him, an undercover law enforcement agent (hereinafter "UCA-1"). During these interactions, UCA-1 represented to Brooks that UCA-1 was a distributor of cocaine who was using bitcoins to pay a vendor on Market-1. Brooks sold 78.27095 bitcoins to UCA-1 for $21,000.

h. The parties stipulate that, where the total amount of commingled funds was greater, more than $150,000 and up to $250,000 is the value of criminally derived funds involved in the defendant's relevant conduct encompassed in the Information.

## III. SENTENCING GUIDELINES

5. The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

## BASE OFFENSE LEVEL

6. The government and the defendant agree that Guidelines §§ 2S1.1(a)(2) and 2B1.1(b)(1)(F) apply to the offense of conviction and provide for a base offense level of **18**.

## SPECIFIC OFFENSE CHARACTERISTICS
## U.S.S.G. CHAPTER 2 ADJUSTMENTS

7. The government and the defendant agree that the following specific offense characteristics do apply:

a. the six-level increase pursuant to Guidelines § 2S1.1(b)(1) (laundered funds were proceeds of or intended to promote offense involving distribution of controlled substance); and

b. the four-level increase pursuant to Guidelines § 2S1.1(b)(2)(C) (defendant was in the business of laundering funds).

## ADJUSTED OFFENSE LEVEL

8. Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offense of conviction is **28**.

## ACCEPTANCE OF RESPONSIBILITY

9. At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one (1) level downward adjustment of Guidelines § 3E1.1(b), which would result in a total offense level of **25**.

## CRIMINAL HISTORY CATEGORY

10. It is the understanding of the government and the defendant that the defendant's criminal history category is **I**. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES APPLICATION, CALCULATIONS AND IMPACT

11. It is the understanding of the government and the defendant that, with a total offense level of **25** and criminal history category of **I**, and taking into account the statutory maximum penalties, the defendant's sentencing range would be a term of imprisonment of

**57** to **60** months, a fine of **$10,000** to **$100,000**, and a period of supervised release of **1** to **3** years. Notwithstanding this, the defendant understands that at sentencing, the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

12. The government and the defendant agree to the Sentencing Guidelines calculations set forth in this agreement and neither party will advocate or recommend the application of any other Guideline, or move for any Guidelines departure, or move for or recommend a sentence outside the Guidelines, except as specifically set forth in this agreement. A breach of this paragraph by one party will relieve the other party of any agreements made in this plea agreement with respect to sentencing motions and recommendations. A breach of this paragraph by the defendant shall also relieve the government from any agreements to dismiss or not pursue additional charges.

13. The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

## IV. STATUTE OF LIMITATIONS

14. In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees not to assert the statute of limitations as a defense to any other federal criminal offense which is not time barred as of the date of this

agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

## V. GOVERNMENT RIGHTS AND RESERVATIONS

15. The defendant understands that the government has reserved the right to:

a. provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b. respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c. advocate for a specific sentence consistent with the terms of this agreement including the amount of a fine and the method of payment; and

d. modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor.

16. The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

17. At sentencing, the government will move to dismiss the Criminal Complaint pending under Magistrate's No. 15-mj-1117-JJM.

## VI. APPEAL RIGHTS

18. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 11, above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

19. The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

20. The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 11, above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VII. TOTAL AGREEMENT AND AFFIRMATIONS

21. This plea agreement represents the total agreement between the defendant, DOUGLAS BROOKS, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

JAMES P. KENNEDY, JR.
Acting United States Attorney
Western District of New York

BY: ______________________
WEI XIANG
Assistant United States Attorney

Dated: August 3, 2017

I, DOUGLAS BROOKS, have read this agreement, which consists of pages 1 through 9. I have had a full opportunity to discuss this agreement with my attorney, Rodney O. Personius. I agree that it represents the total agreement reached between myself and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I sign this agreement voluntarily and of my own free will.

______________________
DOUGLAS BROOKS
Defendant

Dated: August 3, 2017

______________________
RODNEY O. PERSONIUS, ESQ.
Attorney for the Defendant

Dated: August 3, 2017